UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN D DOYLE, JR., *Regional Director of Region 2 of the National Labor Relations Board for and on Behalf of the National Labor Relations Board*,<br><br>Plaintiff,<br><br>v.<br><br>COVENANT HOUSE NY,<br><br>Respondent; and<br><br>DON T. CARMODY,<br><br>Additional Respondent in Contempt. | 25-CV-3642 (RA)<br><br><u>MEMORANDUM OPINION & ORDER</u> |

RONNIE ABRAMS, United States District Judge:

On August 24, 2026, Petitioner John D. Doyle, Jr., for and on behalf of the National Labor Relations Board ("NLRB" or the "Board"), moved to adjudicate Respondents Covenant House NY ("Covenant House") and Don T. Carmody, Esq., Covenant House's attorney, in civil contempt of this Court for allegedly violating and disobeying the Court's September 5, 2025, Order (the "Section 10(j) Order") granting interim injunctive relief pursuant to Section 10(j) of the National Labor Relations Act ("NLRA"). *See* Dkt. 61 at 1−2 ("Contempt Mot."). On September 2, 2026, Covenant House moved to dismiss Petitioner's Contempt Motion pursuant to Rules 12(b)(1), 12(h)(3), and 12(i) of the Federal Rules of Civil Procedure. *See* Dkt. 70. Covenant House also moved, in the alternative, to stay the contempt proceedings pending the Second Circuit's ruling on its appeal from the Section 10(j) Order, or, absent a stay, for the Court to set a schedule for limited, expedited discovery and an evidentiary hearing. *Id.* Carmody separately moved to dismiss

Petitioner's Contempt Motion and joined in Covenant House's arguments for dismissal. *See* Dkt. 78 at 2−3.

For the reasons set forth below, the Court denies Respondents' motions to dismiss and denies Covenant House's alternative motion to stay the contempt proceedings. The Court grants Covenant House's motion to set a schedule for limited, expedited discovery and an evidentiary hearing. Within two weeks of the entry of this Opinion, the parties shall confer and jointly submit a proposed discovery schedule for targeted discovery on disputed facts as well as a revised proposed briefing schedule on the pending Contempt Motion.

**BACKGROUND**

On May 1, 2025, after 1199SEIU United Healthcare Workers East (the "Union") filed an unfair labor practice charge before the NLRB, Petitioner petitioned the Court pursuant to Section 10(j) of the NLRA for temporary injunctive relief pending final disposition of the charge by the Board. *See* Dkt. 1. The Court orally granted Petitioner's request on August 13, 2025, *see* Dkt. 59 at 56, and issued a written order granting relief on September 5, 2025, *see* Dkt. 52. Covenant House filed a notice of appeal the same day. Dkt. 53. On September 9, 2025, the Court denied Covenant House's motion to stay the Section 10(j) Order pending appeal. *See* Dkt. 56.

The Board issued its final Administrative Decision and Order in *Covenant House New York*, 375 NLRB 21 (Aug. 5, 2026), on August 5, 2026. *See* Dkt. 61, Ex. B. Following a lengthy analysis of the unfair labor practices alleged in the Union's charge, the Board concluded, among other things, that Covenant House had violated the NLRA by refusing to bargain with the Union in good faith. *Id.* at 25–28. Because the Section 10(j) Order enjoined Covenant House's conduct "pending the final disposition of the related matters pending before the Board," *see* Dkt. 52 at 1, the Section 10(j) Order terminated by operation of law upon issuance of the Board's final decision.

On August 24, 2026, approximately three weeks after the Board rendered its final decision, Petitioner moved to adjudicate Respondents in civil contempt of this Court for allegedly violating and disobeying the Court's Section 10(j) Order. *See* Contempt Mot. at 1−2. In his motion, Petitioner seeks retrospective compensatory relief based on Respondents' alleged non-compliance with the Section 10(j) Order during the pendency of that Order from September 5, 2025, through August 4, 2026. *Id.* Covenant House responded to the Contempt Motion on September 2, 2026, by moving to dismiss the motion, asserting that this Court lacked subject matter jurisdiction over the contemplated contempt proceedings. *See* Dkt. 71 ("Covenant House Br.") at 9−13. Covenant House moved in the alternative for a stay of the contempt proceedings pending the Second Circuit's ruling on its appeal of the Section 10(j) Order, *id.* at 14−17, or, absent a stay, for limited, expedited discovery and an evidentiary hearing, *id.* at 17−19. On September 9, 2026, Carmody also moved to dismiss Petitioner's Contempt Motion, *see* Dkt. 78, and expressly adopted Covenant House's arguments related to dismissal, *see* Dkt. 80 ("Carmody Br.") at 8. Carmody did not join in Covenant House's motion to stay the contempt proceedings or in its motion for the Court to schedule limited discovery and an evidentiary hearing. *Id.*

**LEGAL STANDARDS**

The standard governing a motion to dismiss under Rule 12(h)(3) of the Federal Rules of Civil Procedure is the same as that governing a motion to dismiss under Rule 12(b)(1).[1] *See Bell*

---

[1] Respondents styled their response to Petitioner's Contempt Motion as a "Motion to Dismiss" under Rules 12(b)(1), 12(h)(3), and 12(i). *See* Dkt. 70 at 1; Dkt. 78 at 1. But Rule 12(b) speaks of defenses to "a claim for relief in any *pleading*." Fed. R. Civ. P. 12(b) (emphasis added). Petitioner's Contempt Motion is not a "pleading" within the meaning of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 7(a) (limiting the pleadings allowed in federal court to complaints, answers, and, if ordered by the court, replies to an answer); *Canadian Overseas Ores Ltd. v. Compania de Acero Del Pacifico S.A.*, 528 F. Supp. 1337, 1344 (S.D.N.Y. 1982), *aff'd*, 727 F.2d 274 (2d Cir. 1984) ("The term 'pleading', as defined in the Federal Rules of Civil Procedure, does not encompass a motion under Rule 12, or any motion for that matter."). A motion to dismiss under Rule 12(b) is therefore not the proper procedural vehicle by which to challenge the Contempt Motion. Nevertheless, Rule 12(h)(3) motions are "subject to the same standard as motions brought pursuant to Rule 12(b)(1)" and "need not be responsive to a pleading." *See Peterson v. Cont'l Airlines, Inc.*, 970 F. Supp. 246, 249 (S.D.N.Y. 1997) (citing *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954

*v. Ramirez*, No. 13-CV-7916, 2014 WL 7178344, at *2 (S.D.N.Y. Dec. 9, 2014).[2] A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015). The party invoking the Court's subject matter jurisdiction bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

In determining whether to issue a stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). "The first two factors of [this] standard are the most critical," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Nken*, 556 U.S. at 433–34. "Where the likelihood of success on the merits is significant, less irreparable harm must be shown, and vice versa." *LG Elecs., Inc. v. Wi-LAN USA, Inc.*, No. 13-CV-2237, 2015 WL 4578537, at *1 (S.D.N.Y. July 29, 2015) (citing *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)). In no case, however, is it "enough that the chance of success be better than negligible," or that there be a mere "possibility of irreparable injury." *Nken*, 556 U.S. at 434.

---

F.2d 874, 880 n.3 (3d Cir.1992)). In any event, federal courts have an independent obligation to consider their own subject matter jurisdiction. *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). This technical issue therefore does not affect the Court's analysis.

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, footnotes, omissions, and emphases and adopt all alterations in quoted text.

## DISCUSSION

The Court will first address whether it has subject matter jurisdiction over the contemplated contempt proceedings and will then turn to the motion for a stay and the motion to set a schedule for limited discovery and an evidentiary hearing.

### I. Jurisdiction

Respondents contend that the Court lacks subject matter jurisdiction over the contemplated contempt proceedings. The Court disagrees.[3]

"The power to punish for contempts is inherent in all courts," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), and it is well settled that "[a] federal court that has entered a decree within its jurisdiction has inherent authority to enter an injunctive order designed to effectuate that decree and to impose sanctions for contempt in order to enforce compliance with its mandates," *Motown Rec. Co., L.P. v. Motown Beverage Co. of Ohio*, 28 F. App'x 107, 109 (2d Cir. 2002) (summary order); *see AngioDynamics, Inc. v. Biolitec AG*, 823 F.3d 1, 6 (1st Cir. 2016) (concluding that a court that "possesses subject-matter jurisdiction over an action" necessarily "must possess civil contempt jurisdiction in equal measure to see that action through"). Accordingly, if a court acted within its subject matter jurisdiction in entering an order, the court retains jurisdiction to impose sanctions for contempt of that order, even if subsequent events deprive the court of jurisdiction to take further action on the merits. *See, e.g.*, *Libaire v. Kaplan*, No. 6-CV-1500, 2012 WL 273121, at *2 (E.D.N.Y. Jan. 30, 2012) (noting that, although federal courts only have subject matter jurisdiction over "live cases and controversies," a court "may make an adjudication of contempt

[3] Because Carmody "adopts Respondent Covenant House's argument set forth in Respondent Covenant House's Memorandum" regarding dismissal, Carmody Br. at 9, the Court addresses Respondents' motions to dismiss jointly.

and impose a contempt sanction even after the action in which the contempt arose has been terminated" (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 451 (1911)).

Courts may exercise their "inherent power to hold a party in civil contempt" both "in order to enforce compliance with an order of the court or to compensate for losses or damages." *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981). "Where a civil contempt proceeding is coercive in nature and seeks to enforce an interlocutory order, it abates when the proceedings out of which it arises are terminated." *Backo v. Loc. 281, United Bhd. of Carpenters & Joiners of Am.*, 438 F.2d 176, 182 (2d Cir. 1970). But "[n]o such rule applies to purely compensatory civil contempt judgments." *Id.*; *see also People's Hous. Dev. Corp. v. City of Poughkeepsie*, 425 F. Supp. 482, 495 (S.D.N.Y. 1976) ("There is a vital distinction between coercive contempt proceedings, which do not survive the abatement of the original actions out of which they arise, and compensatory contempt proceedings, which do survive.").

Here, there is no dispute that the Court acted within its subject matter jurisdiction in entering the Section 10(j) Order. Pursuant to Section 10(j) of the NLRA, the Board was authorized, upon the issuance of a complaint charging Covenant House with engaging in an unfair labor practice, "to petition any United States district court . . . for appropriate temporary relief or restraining order," and this Court "ha[d] jurisdiction to grant to the Board such temporary relief or restraining order as it deem[ed] just and proper." 29 U.S.C. § 160(j). Because the Court acted "within its jurisdiction" in entering the Section 10(j) Order, it also "has inherent authority . . . to impose sanctions for contempt in order to enforce compliance with" that Order. *Motown Rec.*, 28 F. App'x at 109. This is true notwithstanding the fact that the Section 10(j) Order was terminated by operation of law upon issuance of the Board's decision. *See Drew-King v. Deep Distribs. of Greater N.Y.*, 274 F. Supp. 3d 132, 136–37 (E.D.N.Y. 2017) (considering a request for

compensatory contempt sanctions notwithstanding the fact that the court's earlier Section 10(j) injunction had "terminated by operation of law" upon issuance of the Board's decision); *Frankl v. HTH Corp.*, 832 F. Supp. 2d 1179, 1216 (D. Haw. 2011) (considering an amended contempt motion seeking compensatory relief that was filed after the court's Section 10(j) injunction had terminated by operation of law upon issuance of the Board's decision).

Respondents' arguments to the contrary are unavailing. Respondents first contend that dismissal is warranted because the jurisdiction conferred by Section 10(j) expires upon the issuance of a final decision by the Board. *See* Covenant House Br. at 9–12. This argument misunderstands the nature of the Court's contempt jurisdiction. While Section 10(j) only "g[ives] jurisdiction to [district] courts to issue injunctions in unfair labor practice proceedings . . . pending final disposition by the Board," *Muniz v. Hoffman*, 422 U.S. 454, 462 (1975), district courts have inherent authority to punish for contempt—and jurisdiction to exercise that inherent authority—for violations of prior orders entered within their jurisdiction, *see Motown Rec.*, 28 F. App'x at 109; *AngioDynamics*, 823 F.3d at 6. Therefore, while Section 10(j)'s jurisdictional grant terminated upon the issuance of the Board's final decision on August 5, 2026, the Court's jurisdiction to impose compensatory sanctions for prior violations of the Section 10(j) Order did not. *See Drew-King*, 274 F. Supp. 3d at 136–37; *Frankl*, 832 F. Supp. 2d at 1216; *Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 376 (10th Cir. 1996) ("Generally speaking, a person who violates an injunction or temporary restraining order during its pendency is subject to a compensatory civil contempt judgment, even if the injunction or restraining order later terminates due to passage of time or mootness.").

To the extent Respondents contend that the NLRA and the Norris-LaGuardia Act curtail district courts' inherent contempt power, that argument too is unpersuasive. Courts should "not

lightly assume that Congress has intended to" limit the "exercise of the inherent power of lower federal courts," including the contempt power. *Chambers*, 501 U.S. at 47; *see FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 377–78 (D.C. Cir. 2011) ("Although Congress can limit [the inherent contempt power], it must do so through a clear and valid legislative command . . . that will not be lightly assumed."). Neither the NLRA nor the Norris-LaGuardia Act purport to limit the inherent contempt authority of the federal courts.

Respondents also argue that the Contempt Motion must be dismissed because it was filed after the Section 10(j) Order was terminated by operation of law upon issuance of the Board's decision. *See* Covenant House Br. at 9, 12. But as explained above, the relevant question is not whether the Court continued to have jurisdiction over the merits when the Contempt Motion was filed, but whether the Court "entered [the underlying Section 10(j) Order] within its jurisdiction." *See Motown Rec.*, 28 F. App'x at 109; *Libaire*, 2012 WL 273121, at *2. Here, where the Court acted within its jurisdiction in entering the underlying Section 10(j) Order, it retains inherent jurisdiction to sanction contempt of the Section 10(j) Order while that Order was in effect—even if Petitioner's motion for contempt was filed after the Section 10(j) Order was terminated.[4] Tellingly, Respondents cite no case—and this Court has found none—where a court has concluded that it lacks jurisdiction to award compensatory civil contempt sanctions for violations of a prior order entered within the court's subject matter jurisdiction.

[4] Respondents assert that Petitioner failed to identify any case where a court considered a contempt motion that was filed after a Section 10(j) injunction had terminated upon issuance of a Board's final decision. *See* Dkt. 87 at 2. Not quite. In *Frankl v. HTH Corp.*, the district court considered an amended contempt motion that was filed almost a month after the Board issued its final decision. *See* 832 F. Supp. 2d at 1186 (noting that the petitioner filed their amended contempt motion after "the Board largely affirmed the ALJ Decision"). While the petitioner in *Frankl* filed an initial contempt motion before the Board rendered its decision, that motion was withdrawn. *See Frankl v. HTH Corp.*, No. 10-CV-14 (D. Hawaii, Nov. 29, 2011), Dkt. 99. The amended contempt motion was the operative motion before the court.

In sum, because the Court acted within its subject matter jurisdiction in entering the Section 10(j) Order, it has subject matter jurisdiction to grant compensatory contempt sanctions for violations of the Section 10(j) Order that occurred while that Order was in effect. Respondents' motion to dismiss for lack of subject matter jurisdiction is thus denied.

## II. Laches

Respondents also argue that Petitioner unreasonably delayed in bringing the Contempt Motion and that the motion is therefore is barred by the doctrine of laches. *See* Covenant House Br. at 13. Although Respondents advance this argument in support of their motions to dismiss the Contempt Motion for lack of jurisdiction, *see id.*, the doctrine of laches does not bear on a court's subject matter jurisdiction, *see Flynn v. Ward Leonard Elec. Co.*, 84 F. Supp. 399, 401 (S.D.N.Y. 1949) ("Laches . . . involves not jurisdiction but only failure to state a claim upon which relief may be granted.").

Regardless, Respondents' argument is unconvincing. To make out a successful defense under the doctrine of laches, Respondents must establish that "(1) [Petitioner] knew of [Respondents'] misconduct; (2) [Petitioner] inexcusably delayed in taking action; and (3) [Respondents] w[ere] prejudiced by the delay." *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998). In considering whether a party inexcusably delayed in taking action, "it is the reasonableness of the delay rather than the number of years that elapse which is the focus of inquiry." *Juicy ZCouture, Inc. v. L'Oreal USA, Inc.*, No. 4-CV-7203, 2006 WL 1012939, at *34 (S.D.N.Y. Apr. 19, 2006) (quoting *Stone v. Williams*, 873 F.2d 620, 624 (2d Cir. 1989)). No unreasonable delay occurred here. Less than twelve months elapsed between Respondents' first alleged violations of the Section 10(j) Order in September 2025 and the filing of the Contempt

Motion in August 2026.[5] Moreover, Respondents do not dispute that staffing at the NLRB was affected by the federal government shutdown in 2025, that the Board informed Covenant House that it was conducting a contempt investigation based on Covenant House's alleged violations of the Section 10(j) Order, or that Covenant House filed its own unfair labor practice charge against the Union during the pendency of the Section 10(j) Order. *See* Dkt. 87 ("Covenant House Reply Br.") at 5–6. In light of these undisputed facts, the Court cannot conclude that Petitioner unreasonably delayed in bringing the Contempt Motion.

Nor have Respondents demonstrated that they were prejudiced by Petitioner's delay. Prejudice ensues when a party "has changed his position in a way that would not have occurred if the [other party] had not delayed." *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996). Respondents assert that they were "prejudiced by Petitioner's delay[] because [Covenant House] was given no indication of Petitioner's position that its actions in bargaining in any way violated the Court's [Section 10(j)] Order." Covenant House Reply Br. at 5; *see also* Dkt. 88 ("Carmody Reply Br.") at 5 ("[N]either [Covenant House] nor I were given any indication by the Petitioner that our conduct during negotiations was being viewed by the Petitioner as violating the Court's [Section 10(j)] Order until *after* the Order had expired . . . ."). Not so. Again, Respondents acknowledge that Petitioner expressly informed Covenant House four months after the Section 10(j) Order was entered that the Board was conducting a contempt investigation. *See* Covenant House Reply Br. at 5–6; Carmody Reply Br. at 4–5. Petitioner therefore "did not sit quietly by while [Respondents allegedly] refused to comply with the [C]ourt's orders." *EEOC v. Loc. 638, Loc. 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1179 (2d Cir. 1985) (rejecting a

---

[5] Petitioner alleges that Respondents "fail[ed] to comply with the Injunction Order during its pendency from September 5, 2025, through August 4, 2026." Dkt. 64 at 4.

defense of laches where plaintiffs "complained, albeit informally," that defendants were violating the court's orders). Moreover, Respondents do not articulate how, if at all, they changed their position as a result of Petitioner's delay. Accordingly, Respondents have failed to demonstrate that they were prejudiced by Petitioner's delay. Petitioner's Contempt Motion is not barred by the doctrine of laches.

## III. Stay

The Court turns next to Covenant House's motion to stay the contempt proceedings pending the Second Circuit's resolution of its appeal from the Court's Section 10(j) Order.

Covenant House's request for a stay of the contempt proceedings pending its appeal of the Section 10(j) Order is in tension with the Second Circuit's recent order granting Petitioner's motion to hold Covenant House's appeal "in abeyance pending the outcome of civil contempt proceedings in the district court." *Doyle, Jr. v. Covenant House NY*, No. 25-2166 (2d Cir. 2025), Dkt. 94. In other words, Covenant House asks this Court to stay the contempt proceedings pending resolution of its appeal from the Section 10(j) Order, notwithstanding the fact that the appeal has been held in abeyance pending the outcome of these very contempt proceedings. To square this circle, Covenant House asks the Court to read the Second Circuit's order as "simply demonstrat[ing] the Second Circuit's intention to permit the District Court to determine the appropriate course of action in this case in the first instance." Covenant House Br. at 17. The "appropriate course of action" may include, Covenant House suggests, staying the contempt proceedings pending resolution of its appeal. *See id.* The Court rejects this strained reading of the Circuit's order. The order holding the appeal in abeyance pending the "outcome" of the "civil contempt proceedings" reads much more naturally to mean that the appeal is held in abeyance pending a final resolution of the contempt proceedings. *See, e.g.*, *Outcome*, American Heritage

Dictionary (5th ed. 2011) (defining "Outcome" as "An end result"). Indeed, this is how Covenant House itself appears to have understood Petitioner's motion to hold the appeal in abeyance when it opposed that motion in the Second Circuit. *See Doyle, Jr. v. Covenant House NY*, No. 25-2166 (2d Cir. 2025), Dkt. 92 at 7 (imploring the Circuit not to "withhold[] review of the [Section 10(j)] Order while contempt proceedings proceed and are concluded"). Accordingly, in light of the Second Circuit's order holding the appeal in abeyance pending the outcome of the contempt proceedings in this Court, Covenant House's motion for a stay is denied.

Even if the Court were to accept Covenant House's reading of the Second Circuit's order, the Court would deny the motion for a stay. The party requesting a stay pending appeal "bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Nken*, 556 U.S. at 433–34. As the Court explained in denying Covenant House's earlier motion to stay the Section 10(j) Order pending appeal, Covenant House has not made a strong showing that it is likely to succeed on appeal. *See* Dkt. 56 at 1–2. This is still clearer now that the Board has rendered its final decision and expressly rejected the arguments that Covenant House advances on appeal. *See* Dkt. 61, Ex. B at 1 n.6 ("[T]he Respondent's challenge to the facial validity of the Board's Skip Counsel Policy is without merit."); *id.* at 27 ("Covenant House's 'admissions' are not dispositive, and the evidentiary record establishes that [certain individuals] were not managers within the meaning of the [NLRA] while on the [U]nion's bargaining committee."). Nor has Covenant House shown that it would be irreparably injured absent a stay. Covenant House asserts that it would be injured by the "money and time spent . . . on the contempt proceedings." Covenant House Br. at 15. But it is well settled that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Jayaraj v.*

*Scappini*, 66 F.3d 36, 39 (2d Cir. 1995). Accordingly, the Court denies Covenant House's motion for a stay of the contempt proceedings pending its appeal of the Section 10(j) Order.

**IV. Discovery and Evidentiary Hearing**

Finally, Covenant House argues that, if its motion to dismiss and motion to stay are denied, the Court should set a schedule for "limited, expeditious discovery" regarding the factual disputes in the Contempt Motion and that the Court should schedule an evidentiary hearing. *See* Covenant House Br. at 18.

The parties agree that there exist several disputes of material fact regarding Respondents' alleged violations of the Section 10(j) Order. *See id.*; Dkt. 84 at 14. The Court will therefore allow limited discovery to aid the Court in resolving these factual disputes. *See State of N.Y. v. Shore Realty Corp.*, 763 F.2d 49, 53 (2d Cir. 1985) ("Discovery may occur in connection with a pending contempt proceeding . . . ."); *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 9-CV-6148, 2012 WL 12932049, at *57 (S.D.N.Y. July 17, 2012), *report and recommendation adopted*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012) (noting that courts have allowed limited discovery in contempt proceedings where "the issue to be determined was whether or not a violation of an order had occurred"). However, because the Court has concluded, based on undisputed facts in the record, that the doctrine of laches does not bar Petitioner's Contempt Motion, discovery will not be permitted to further develop that defense. *See* Covenant House Br. at 19 (proposing to "take depositions and collect documentary evidence and interrogatories from Petitioner and from related, relevant Board Officials" to support Covenant House's "argument concerning the application of the doctrine of laches"). Within two weeks of the entry of this Opinion, the parties shall confer

and jointly submit a proposed discovery schedule for targeted discovery limited to disputed facts as well as a revised proposed briefing schedule on the pending Contempt Motion.[6]

Finally, the Court also grants Covenant House's unopposed request for an evidentiary hearing on the Contempt Motion. *See N.Y. State Nat. Org. for Women v. Terry*, 697 F. Supp. 1324, 1330 n.6 (S.D.N.Y. 1988); S.D.N.Y. L. Civ. R. 83.6(b) ("If the alleged contemnor puts in issue his or her alleged misconduct or the damages thereby occasioned, that person will upon demand be entitled to have oral evidence taken, either before the court or before a master appointed by the court."). The evidentiary hearing will be scheduled by separate order once the discovery schedule has been approved.

**CONCLUSION**

For the reasons stated above, the Court denies Respondents' motions to dismiss and denies Covenant House's alternative motion to stay the contempt proceedings. The grants Covenant House's motion for the Court to set a schedule for limited discovery and for an evidentiary hearing. The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 70, 78, 79, and 80.

SO ORDERED.

Dated: October 20, 2026
New York, New York

Ronnie Abrams
United States District Judge

[6] On September 3, 2026, the Court adjourned Respondents' deadline to respond to the Contempt Motion *sine die* pending the resolution of the threshold issues addressed in this Opinion. *See* Dkt. 77.